UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re Application of Dr. HANNO BERGER for an order to conduct discovery for use in a foreign proceeding.

Petitioner.

No. 26-mc-562

-----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S *EX PARTE* APPLICATION FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

Jeffrey D. Brooks
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708
jbrooks@morrisoncohen.com

*Attorneys for Petitioner Dr. Hanno Berger*

# Table of Contents

INTRODUCTION ..... 1

JURISDICTION AND VENUE ..... 2

FACTUAL BACKGROUND ..... 2

Dr. Berger's Background ..... 2

The Tax Treatment of "Cum/Ex" Dividend Arbitrage Trades ..... 3

The Prosecution of Dr. Berger ..... 4

The Documents Being Sought ..... 6

ARGUMENT ..... 11

I. Section 1782 Authorizes the Court to Grant Applications for Discovery in Aid of Foreign Proceedings ..... 11

II. Dr. Berger's Application Satisfies the Statutory Requirements ..... 13

A. Shearman Is Found within the Southern District of New York. ..... 13

B. The Discovery Sought Is for Use in Foreign Proceedings ..... 14

C. Dr. Berger Is an Interested Person ..... 16

III. The *Intel* Discretionary Factors Weigh Heavily in Favor of Granting Petitioner's Application ..... 16

A. Shearman Is Not a Party to the Foreign Proceedings ..... 16

B. The Foreign Tribunals Will Be Receptive to the Discovery ..... 17

C. The Application Is Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions ..... 20

D. The Proposed Discovery Requests Are Not Unduly Burdensome Nor Intrusive ..... 21

E. *Ex Parte* Relief Is Appropriate under Section 1782 ..... 22

CONCLUSION ..... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434 (S.D.N.Y 2011) ........ 17

*Metallgesellschaft v. Hodapp (In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery)*, 121 F.3d 77 (2d Cir. 1997) ........ 12, 13, 21

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88, 2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Dec. 29, 2006) ........ 17

*In re Ex Parte Application Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Habib for Use in a Foreign Proceeding*, No. 21-MC-522, 2022 U.S. Dist. LEXIS 72545 (S.D.N.Y. Apr. 20, 2022) ........ 18

*In re B&C KB Holding GmbH*, No. 22-MC-00180 (LAK) (VF), 2023 U.S. Dist. LEXIS 19813 (S.D.N.Y. Feb. 6, 2023) ........ 18

*In re Bayer AG*, 146 F.3d 188 (3d Cir. 1998) ........ 12

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ........ 12, 19

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ........ 13

*In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ........ 12, 13

*In re Devine*, No. 22-MC-133 (VSB), 2022 U.S. Dist. LEXIS 94193 (S.D.N.Y. May 25, 2022) ........ 13

*In re Eurasian Natural Resources Corp. Ltd.*, No. 18-mc-80041-LB, 2018 U.S. Dist. LEXIS 54857 (N.D. Cal. Mar. 30, 2018) ........ 20

*Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) ........ 17

*In re Google, Inc.*,
No. 14-mc-80333-DMR, 2014 U.S. Dist. LEXIS 173085 (N.D. Cal. Dec. 15, 2014) ....20

*In re Hansainvest Hanseatische Inv.-GmbH*,
364 F. Supp. 3d 243 (S.D.N.Y. 2018)....18

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
633 F.3d 591 (7th Cir. 2011) ....21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).... *passim*

*Lancaster Factoring Co. v. Mangone*,
90 F.3d 38 (2d Cir. 1996)....16

*London v. Does 1-4*,
279 Fed. Appx. 513 (9th Cir. 2008)....21

*In re Mutabagani*,
No. 22 MC 299 (VB), 2023 U.S. Dist. LEXIS 61183 (S.D.N.Y. Apr. 6, 2023) ....14

*In re Packaged Seafood Prods. Antitrust Litig.*,
338 F. Supp. 3d 1118 (S.D. Cal. 2018)....13

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*,
110 F. Supp. 3d 512 (S.D.N.Y. June 22, 2015) ....18

*In re Sarrio S.A.*,
173 F.R.D. 190 (S.D. Tex. 1995)....12, 22

*Symeou v. Hornbeam Corp (In re Hornbeam Corp.)*,
722 Fed. Appx. 7 (2d Cir. 2018)....22

*United Co. Rusal, PLC v. Trafigura A.G.*,
No. 3:11mc17 (SRU), 2011 U.S. Dist. LEXIS 26897 (D. Conn. Mar. 16, 2011) ....2

*In re Upper Brook Cos.*,
No. 22-mc-97 (PKC), 2022 U.S. Dist. LEXIS 231242 (S.D.N.Y. Dec. 23, 2022) ....17

**Statutes**

28 U.S.C. § 1331....2

28 U.S.C. § 1782.... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 45 .....................................................................................21

Petitioner Dr. Hanno Berger ("Dr. Berger" or "Petitioner"), through his undersigned counsel, respectfully submits this Memorandum of Law in support of his Application for an Order to Take Discovery for Use in Foreign Proceedings pursuant to 28 U.S.C. § 1782 (the "Application").

**INTRODUCTION**

Dr. Berger makes this Application for an order authorizing him to issue a subpoena *duces tecum* upon the law firm Allen Overy Shearman Sterling US LLP ("Shearman") seeking documents for use in two different, though related, foreign court proceedings in Germany. Dr. Berger is currently serving a 10-year prison sentence in Germany for his involvement in the so-called "Cum-Ex" tax scandal. The first foreign proceeding is a civil action that has been brought against Dr. Berger and others by CACEIS Bank ("CACEIS"), which served as a custodian bank for certain funds that executed certain "Cum-Ex" trades. CACEIS has itself been held liable for its actions. In its civil proceeding, CACEIS seeks contribution from Dr. Berger and other alleged participants in the "Cum-Ex" tax scandal. The second foreign court proceeding is an application Dr. Berger is bringing to reopen the German criminal proceedings that resulted in his criminal convictions on tax-related charges.

The evidence sought in this Application is highly material to Dr. Berger's alleged culpability and therefore highly relevant both to CACEIS's action against Dr. Berger and to Dr. Berger's action to re-open the German criminal proceedings. Shearman is likely in possession of documents related to binding tax rulings (*verbindliche Auskunft*) from German tax authorities approving transactions of the type later characterized as "Cum-Ex" transactions, i.e. the very type of transactions for which Dr. Berger has been convicted. Evidence that German tax authorities approved the tax treatment of "Cum Ex" transactions of the type for which Dr. Berger was later

convicted would cast significant doubt on Dr. Berger's convictions, which were based on the argument that the illegal nature of the transactions, while not specifically proscribed by statute or case law, was nevertheless patently obvious and knowable. Evidence that German tax authorities had themselves approved as legal the tax treatment of "Cum-Ex" transactions of the type advocated by Dr. Berger would fatally undercut the argument that Dr. Berger knew, or understood it to be probable, that the positions taken in connection with the Cum-Ex transactions were unlawful. Such evidence would allow Dr. Berger to mount a vigorous defense of CACEIS' claims against him in the ongoing civil proceedings. Such evidence would also provide compelling support to Dr. Berger's effort to reopen the criminal proceedings against him.

As discussed below, this Application satisfies the Section 1782 statutory factors, and each of the *Intel* discretionary factors likewise weighs in favor of granting the Application. Accordingly, Dr. Berger respectfully requests that the Court grant his Application.

## JURISDICTION AND VENUE

As an action seeking discovery for use in foreign proceedings under 28 U.S.C. § 1782, this action arises under federal law, and the Court has jurisdiction pursuant to 28 U.S.C. § 1331. *United Co. Rusal, PLC v. Trafigura A.G.*, No. 3:11mc17 (SRU), 2011 U.S. Dist. LEXIS 26897, at *10 (D. Conn. Mar. 16, 2011). Venue is proper here pursuant to Section 1782(a) because this is the judicial district in which the respondent "resides or is found."

## FACTUAL BACKGROUND

### Dr. Berger's Background

Dr. Berger was born in 1950 in Frankfurt am Main, Germany. He studied law and, while working at the Institute for Banking Law of Goethe University Frankfurt, completed a doctoral dissertation concerning the standard terms and conditions used by banks. He received his doctorate

in 1980, with the distinction *magna cum laude*. He passed the Second German State Examination in Law (i.e. the German equivalent of the bar exam) in Hesse in 1981 with honors. (Declaration of Dr. Hanno Berger, dated September 28, 2026 ("Dr. Berger Decl.") ¶ 2).

In 1981, he joined the tax administration of the State of Hesse. Following additional training in tax law at the Federal Finance Academy, he worked first at the Offenbach tax office responsible for corporate taxation and later at the Frankfurt tax office responsible for stock-exchange and financial-market matters. He served in large-business tax audit functions, including as a bank tax auditor, and ultimately held the rank of Regierungsdirektor. (Dr. Berger Decl. ¶ 3).

In 1996, Dr. Berger left government service and was admitted as a German attorney-at-law and as a German tax adviser. He then joined the law firm Pünder Volhard Weber & Axster (which merged into Clifford Chance in 2000) as a partner. In 2000, Dr. Berger joined the Frankfurt office of Shearman & Sterling LLP as a partner. In 2004, he left Shearman & Sterling and joined Dewey Ballantine LLP, later Dewey & LeBoeuf LLP, as a partner where he established and led the firm's Frankfurt office. In 2010, he left Dewey & LeBoeuf LLP and founded the boutique tax-law firm Berger, Steck & Kollegen. (Dr. Berger Decl. ¶¶ 4, 6).

**<u>The Tax Treatment of "Cum/Ex" Dividend Arbitrage Trades</u>**

Cum-Ex (also referred to as "Cum Ex" or "Cumex") is the name given to a large volume of dividend arbitrage transactions prior to 2012 that involved the use of a tax law loophole on dividend payments that enabled more than one party to claim the same tax refund. It has also been called "dividend stripping." Banks and stockbrokers rapidly traded shares with ("cum") and without ("ex") dividend rights around dividend payment dates, in a way that enabled both parties to claim tax rebates on capital gains tax — a tax that had only been paid once. Rapid trading

between various parties could give the appearance of numerous owners, creating large profits. (Declaration of Jeffrey D. Brooks, dated November 6, 2026, ("Brooks Decl.") ¶ 2).

The Bankers and traders involved in these Cum-Ex transactions, along with their legal advisors, argued that the multi-party share trades and subsequent tax rebates complied with existing laws. They argued that they were merely exploiting a legitimate legal loophole in dividend tax systems rather than committing criminal tax evasion. Some defendants argued that the practice of trading stock rapidly around dividend dates used structural permissions explicitly allowed by the tax code at the time. Because short-selling mechanics and automated withholding tax certificates created a system where multiple parties could technically apply, traders argued they were entitled to the refunds under the literal wording of the law. Financial institutions involved in Cum-Ex transactions argued that they had relied on formal, paid legal opinions and tax expert declarations stating that the transactions conformed to regulatory compliance standards before the laws were later changed to close the loophole. Defense teams claimed there was no deliberate intent to defraud because the tax authorities themselves issued tax reimbursement certificates and failed to stop or clarify the rules for years. (Brooks Decl. ¶ 3).

But courts in countries including Germany and Denmark rejected these defenses. Landmark rulings (such as Germany's Federal Court of Justice decision in 2021) determined that Cum-Ex transactions constituted criminal tax evasion because the applications for tax refunds were legally incorrect or incomplete, as the underlying capital gains tax had only been paid once and short-sellers never actually had the tax debited from them. (Brooks Decl. ¶ 4).

**<u>The Prosecution of Dr. Berger</u>**

Frankfurt prosecutors indicted Dr. Berger for tax fraud in 2017 in connection with advice and assistance he had given clients concerning certain Cum-Ex dividend arbitrage trades. In 2020,

Cologne prosecutors indicted Dr. Berger in connection with other advice and assistance he had given client in connection with other Cum-Ex dividend arbitrage trades. (Dr. Berger Decl. ¶ 7).

The Regional Court of Wiesbaden convicted Dr. Berger in three cases relating to the fiscal years 2006, 2007, and 2008 and imposed an aggregate sentence of eight years and three months. The Regional Court of Bonn convicted Dr. Berger in three cases relating to conduct during the period from 2007 through 2011 and imposed an aggregate sentence of eight years. On May 4, 2026, the Regional Court of Bonn combined the individual sentences imposed in the Bonn and Wiesbaden judgments into a new aggregate sentence of ten years' imprisonment. Dr. Berger is currently serving that sentence at Schwalmstadt Prison (Justizvollzugsanstalt Schwalmstadt) in Germany. (Dr. Berger Decl. ¶¶ 8-9).

Dr. Berger consistently maintained that, during the relevant periods, the tax treatment of Cum-Ex transactions was not sufficiently clear to support the conclusion that he knew, or understood it to be probable, that the positions taken in connection with those transactions were unlawful. But the courts rejected that argument and found that Dr. Berger had acted intentionally. (Dr. Berger Decl. ¶ 10).

Under the procedural rules of the German criminal justice system, Dr. Berger can bring a proceeding at the Regional Court of Wiesbaden or a proceeding at The Regional Court of Bonn at any time seeking to re-open the criminal case against him in that forum. Dr. Berger's criminal counsel Dr. Philipp Fölsing is currently preparing to bring such a proceeding in the Regional Court of Wiesbaden. In that proceeding, Dr. Berger will be entitled to present newly-discovered evidence to the court. (Declaration of Kai A. Schaffelhuber, dated September 28, 2026, ("Schaffelhuber Decl."), ¶¶ 8-9).

**CACEIS Bank**

CACEIS Bank ("CACEIS"), a subsidiary of the French banking giant Crédit Agricole, functioned as a depository/custodian bank for several investment funds involved in Cum-Ex trades. As the depository/custodian bank, CACEIS stored and moved the shares used to generate duplicate tax refunds. Because CACEIS was the entity that physically paid out the tax reimbursements to the investment funds before requesting the tax reimbursements back from the government, German tax authorities moved to hold CACEIS legally responsible when the trades were ruled fraudulent. (Schaffelhuber Decl. ¶ 10).

In 2019, the Munich tax office issued a massive liability assessment ordering CACEIS to return €423 million (€312 million in capital gains taxes and €111 million in interest). CACEIS paid the assessment but also instituted its own legal proceedings in response. CACEIS sought to have the tax assessment notices reversed in the Munich Finance Court. (Schaffelhuber Decl. ¶ 11).

CACEIS also brought a €300 million civil lawsuit in Landgericht München I (Regional Court of Munich I) against the alleged architects and lawyers of the Ex-Cum transactions. Dr. Berger is one of the defendants in that civil lawsuit, which is currently ongoing. Under the procedural rules of the civil lawsuit, Dr. Berger is entitled to present evidence to the court regarding his lack of culpability for the acts alleged. (Schaffelhuber Decl. ¶¶ 12-13).

**The Documents Being Sought**

It has recently come to light that, back in the 2001-2006 time frame, attorneys Reinhard Stockum and Christian Geuyen of Shearman & Sterling had applied, on behalf of one or more banks that were clients of Shearman & Sterling, for one or more binding tax rulings (*verbindliche Auskunft*) from German tax authorities concerning transactions of the type later characterized as

Cum-Ex transactions, and the relevant German tax authority or authorities granted one or more such applications and issued rulings confirming that the proposed tax treatment of the transactions was permissible. (Dr. Berger Decl. ¶ 13).[1]

Lukas Mikelionis is an independent investigative journalist based in the United Kingdom who previously worked for Dow Jones and Fox News. In March 2026, Mr. Mikelionis spoke with Mr. Christian Geuyen. Mr. Mikelionis was investigating tax rulings in connection with Cum-Ex transactions, and a German attorney with whom Mr. Mikelionis was acquainted put Mr. Mikelionis in touch with Mr. Geuyen. (Declaration of Lukas Mikelionis, dated November 2, 2026, ("Mikelionis Decl.") ¶¶ 2-3).

Mr. Geuyen had worked for the German tax authorities and later joined the tax department of Shearman & Sterling. Mr. Geuyen worked at Shearman from 2000 – 2005. (Mikelionis Decl. ¶¶ 2-3). Dr. Berger led the tax team at Shearman's office in Frankfurt up until Dr. Berger's departure from Shearman in 2004. Mr. Geuyen worked as an associate under Reinhard Stockum who was a non-equity partner on Dr. Berger's tax-team at the Frankfurt office. Both Mr. Geuyen and Mr. Stockum remained at Shearman after Dr. Berger's 2004 departure. (Dr. Berger Decl. ¶ 5).

Mr. Geuyen told Mr. Mikelionis that he had worked on hundreds of tax rulings over his career and had worked on tax rulings concerning the treatment of Cum-Ex transactions. Mr. Geyen's work at Shearman & Sterling included work related to Cum-Ex tax rulings, and he personally drafted requests for such tax rulings. Mr. Geuyen confirmed that he had firsthand knowledge of the existence of such rulings. (Mikelionis Decl. ¶ 5).

---

[1] In German tax practice, a binding tax ruling is an advance determination by the competent tax authority concerning the tax treatment of a specifically described proposed transaction. In functional terms, it is comparable to a private letter ruling issued by the United States Internal Revenue Service, although the governing legal rules and procedures are not identical. (Schaffelhuber Decl. ¶ 15).

Mr. Geuyen reported to Mr. Mikelionis that the tax rulings had been obtained for the Cum-Ex structures worked on at Shearman & Sterling's Düsseldorf and Frankfurt offices. He said that they "always had tax rulings" and that rulings had been issued and stamped by the financial authorities. Mr. Geuyen indicated that the tax rulings approved the proposed tax treatment of the Cum-Ex transactions. Mr. Guyen said that when advising clients he had sought to ensure that their arrangements complied with the law. (Mikelionis Decl. ¶¶ 6-7).

Dr. Berger did not have access to these tax rulings during his criminal prosecutions and had no opportunity to show the court what these tax authorities had said. According to Mr. Geuyen, had Dr. Berger had access to those rulings, Dr. Berger would not have gone to prison. The tax rulings would have supported Dr. Berger's defense because they demonstrated that the relevant Cum-Ex arrangements were lawful at the time. (Mikelionis Decl. ¶¶ 10).

Mr. Geuyen told Mr. Mikelionis that approved Cum-Ex arrangements had involved private banks and government-owned banks. Mr. Geuyen said that the tax rulings were issued by local tax authorities and that the matters had also been discussed with higher-level tax authorities, which he referred to as the Oberfinanzdirektion, and with the finance ministry. (Mikelionis Decl. ¶¶ 7-8).

It is highly likely that one client on whose behalf a favorable tax ruling was obtained was HSBC Trinkaus & Burkhardt, a Düsseldorf-based private bank and HSBC subsidiary. Because HSBC Trinkaus & Burkhardt is based in Düsseldorf (North Rhine-Westphalia), the binding ruling would likely have been issued by the OFD Düsseldorf (Oberfinanzdirektion Düsseldorf -- the highest regional tax office, sitting directly under the state ministry). Mr. Geuyen did not hold the files himself and said that they had been kept by Shearman & Sterling. (Mikelionis Decl. ¶¶ 9, 11).

Shearman maintained a centralized document server in New York for each of its offices. Copies of tax ruling requests and binding rulings would likely be found on that server. Dusseldorf files on the server were tagged "DD" and Frankfurt files "FK". Relevant documents likely could be found on the server by searching for Stockum's name and the German term "Verbinliche Auskunft" (binding ruling) between 2001 – 2006. (Mikelionis Decl. ¶¶ 11).

Neither the request nor the binding ruling from the German taxing authority would be covered by the attorney-client privilege. The request and the binding tax ruling were not confidential legal advice to a firm client. Rather, they were communications with a government agency. They were drafted with the intent to disclose them. For those reasons, they are not privileged documents protected from discovery under German law. (Schaffelhuber Decl. ¶ 16).

Documents demonstrating that one or more German tax authority issued binding tax rulings (*verbindliche Auskunft*) concerning transactions of the type later characterized as Cum-Ex transactions and confirming that the proposed tax treatment of the transactions was permissible would be highly material to Dr. Berger's defense in the civil litigation brought against him by CACEIS as well as to Dr. Berger's anticipated proceeding to re-open the criminal case against him. (Schaffelhuber Decl. ¶ 17).

If the reported ruling or rulings exist and concern materially the same tax issue and transaction mechanics that were later treated as criminal in Dr. Berger's cases, they would show that a German tax authority itself expressly approved that tax treatment when presented with the proposed facts. Such evidence would be directly relevant to the criminal courts' finding that the unlawfulness of the tax treatment was sufficiently apparent during the charged periods to establish that Dr. Berger acted with the requisite intent. Express contemporaneous approval by the tax administration of materially comparable transactions would, at a minimum, bear on whether a tax

lawyer in the same period could reasonably have understood the legal position differently than how the taxing authorities later defined it. (Schaffelhuber Decl. ¶ 18).

Thus, Petitioner seeks permission to issue a subpoena *ducus tecum* to Shearman seeking the following:

1. All documents relating to or constituting a request for a binding tax ruling from a German Tax Authority, including but not limited to OFD Düsseldorf (Oberfinanzdirektion Düsseldorf), relating to the tax treatment of a Cum-Ex Transaction, dated from 2001 to 2006.[2]

2. All documents relating to or constituting a binding tax ruling from a German Tax Authority, including but not limited to OFD Düsseldorf (Oberfinanzdirektion Düsseldorf), relating to the tax treatment of a Cum-Ex Transaction, dated from 2001 to 2006.

3. All documents relating to or concerning any binding tax ruling requested from or issued by a German Tax Authority, including but not limited to OFD Düsseldorf (Oberfinanzdirektion Düsseldorf), relating to or involving an anticipated transaction relating to or involving HSBC Trinkaus & Burkhardt, dated from 2001 to 2006.

4. All documents relating to or constituting a request for a binding tax ruling from any taxing authority, government, or governmental agency of any nation, concerning the tax treatment of a Cum-Ex transaction, dated from 2001 to 2006 as to which Reinhard Stockum and/or Christian Gueyen participated in preparing the request.

[2] A "'Cum-Ex' Transaction" is defined as "a stock trading strategy where shares are rapidly short-sold and delivered across a dividend record date, causing clearing systems to issue multiple tax certificates for a single dividend payment." (Brooks Decl. Ex. A).

5. All documents relating to or constituting a binding tax ruling issued in response to a request described in No. 4 above.

6. All non-privileged communications or memoranda related to any requests or any binding tax rulings described in any of Requests Numbers 1-5 above.

7. All documents authored, created, or edited by Reinhard Stockum, or containing any reference to Reinhard Stockum and also containing the German term "Verbinliche Auskunft."

(Brooks Decl. Ex. A).

## ARGUMENT

### I. Section 1782 Authorizes the Court to Grant Applications for Discovery in Aid of Foreign Proceedings

Applications for discovery in aid of a foreign proceeding are governed by Section 1782(a) of Title 28, United States Code, which provides that federal district courts may order discovery for use in a foreign or international tribunal from persons residing in or found in the district. 28 U.S.C. § 1782.[3]

Where the information sought is relevant, it is "presumptively discoverable under § 1782." *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998). "Consistent with the statute's modest *prima*

[3] Section 1782 provides: "(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. . . . [A] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."

*facie* elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *In re Bayer AG*, 146 F.3d at 195; *see also In re Sarrio S.A.*, 173 F.R.D. 190, 193 (S.D. Tex. 1995) ("The history of section 1782 indicates that Congress intended federal courts to provide broad assistance to foreign litigants who request permission to conduct discovery in the United States.").

The threshold requirements of Section 1782(a) are: (1) the persons from whom discovery is sought must reside in or be found in this district; (2) the discovery must be for use in a proceeding in a foreign tribunal; and (3) the applicant must be an "interested person." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004). When all three requirements are met, the decision to grant the request rests with the district court. *Id.* at 260-61; *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("Once the statutory requirements are met, a district court is free to grant discovery in its discretion.") (internal citation omitted); *Metallgesellschaft v. Hodapp (In re An Order Permitting Metallgesellschaft Ag to Take Discovery)*, 121 F.3d 77, 78 (2d Cir. 1997) (same).

In *Intel*, the Supreme Court further articulated the following factors the district court should consider when determining whether to grant an application pursuant to Section 1782(a): (i) whether the person from whom discovery is requested is a party to the foreign proceeding; (ii) the nature of the foreign tribunal, the character of the foreign proceeding and the tribunal's receptivity to the federal court's assistance; (iii) whether the applicant is attempting to circumvent discovery restrictions or policies of the foreign tribunal; and (iv) whether the discovery sought is

unduly intrusive or burdensome. *Intel Corp.*, 542 U.S. at 264-65; *In re del Valle Ruiz*, 939 F.3d 520, 533-34 (2d Cir. 2019) (quoting *Intel,* 542 U.S. at 264-65).

Further, the Second Circuit has instructed "that district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts . . . .'" *Metallgesellschaft*, 121 F.3d at 79 (quoting *In re in re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

The discovery Petitioner seeks in the present application satisfies each statutory requirement, and the discretionary factors outlined by the Supreme Court in *Intel* here weigh heavily in favor of granting Petitioner's requested discovery.

## II. Dr. Berger's Application Satisfies the Statutory Requirements

### A. Shearman Is Found within the Southern District of New York

Shearman "resides or is found" within the Southern District of New York. The scope of this language in Section 1782 "extends to the limits of personal jurisdiction consistent with due process." *Valle Ruiz*, 939 F.3d at 528. As a result, an entity may be "found" within the District if the Court exercises general or specific personal jurisdiction over it. *In re Devine*, No. 22-MC-133 (VSB), 2022 U.S. Dist. LEXIS 94193, at *10 (S.D.N.Y. May 25, 2022).

For general personal jurisdiction, the controlling framework is that an entity is subject to general jurisdiction in a state where it is "essentially at home," and the paradigm homes are the place of organization and the principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). This standard applies to LLPs, not just corporations. *See In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1139 n. 4 (S.D. Cal. 2018)).

Here, Allen Overy Shearman Sterling US LLP ("Shearman") is a Delaware LLP but its headquarters and principal place of business is at 599 Lexington Avenue in New York City. (Brooks Decl. ¶ 8). Thus, because its principal place of business is located within this judicial district, this Court has general personal jurisdiction over Shearman, and Shearman is "found" in this district.

### B. The Discovery Sought Is for Use in Foreign Proceedings

The discovery sought in this Application is for use in two different, though related, foreign court proceedings in Germany. The first foreign proceeding is a civil action that has been brought against Dr. Berger and others by CACEIS Bank ("CACEIS"), which served as a custodian bank for certain funds that executed certain "Cum-Ex" trades. (Dr. Berger Decl. ¶ 12). CACEIS has itself been held liable for its actions. In its civil proceeding, which is currently pending in the Landgericht München I (Regional Court of Munich I), CACEIS seeks contribution from Dr. Berger and other alleged participants in the "Cum-Ex" tax scandal. (Dr. Berger Decl. ¶ 12; Schaffelhuber Decl. ¶¶ 10-12 ).[4]

The second foreign court proceeding is an application Dr. Berger is bringing to reopen the German criminal proceeding against him in the Regional Court of Wiesbadenhat that resulted in his criminal conviction on tax-related charges. Under German law, Dr. Berger can bring a petition to reopen his criminal conviction on the basis of new evidence at any time. Dr. Berger's German criminal attorney Dr. Phillipp Fölsing is presently preparing such a proceeding in the Regional Court of Wiesbadenhat to be based on new evidence uncovered through various means, including potentially through the discovery requested here. (Schaffelhuber Decl. ¶¶ 6-9; Dr. Berger Decl. ¶ 11). Section 1782 may properly support this contemplated proceeding, which is "within

[4] As discussed below, Dr. Berger is entitled to introduce new evidence in the civil proceedings, notwithstanding his criminal convictions. (Schaffelhuber Decl. ¶¶ 23-24).

reasonable contemplation." *See In re Mutabagani*, No. 22 MC 299 (VB), 2023 U.S. Dist. LEXIS 61183, *7 (S.D.N.Y. Apr. 6, 2023) ("The proceeding must be 'within reasonable contemplation,' but need not be 'pending or even imminent in order to meet the 'for use' requirement.'") (citation and internal quotation omitted).

The evidence sought in this Application is highly material to Dr. Berger's alleged culpability and therefore highly relevant both to CACEIS's pending civil proceeding against Dr. Berger and to Dr. Berger's anticipated proceeding to re-open the German criminal case. Shearman is likely in possession of documents related to binding tax rulings (*verbindliche Auskunft*) from German tax authorities approving transactions of the type later characterized as "Cum-Ex" transactions, i.e. the very type of transactions for which Dr. Berger has been convicted and upon which his alleged liability to CACEIS depends. Evidence that German tax authorities approved the tax treatment of "Cum Ex" transactions of the type for which Dr. Berger was later convicted would cast significant doubt on Dr. Berger's legal culpability, which was based on the argument that the illegal nature of the transactions, while not specifically proscribed by statute or case law, was nevertheless patently obvious and knowable. Evidence that German tax authorities had themselves approved as legal the tax treatment of Cum-Ex transactions of the type advocated by Dr. Berger would fatally undercut the argument that Dr. Berger knew, or understood it to be probable, that the positions taken in connection with the Cum-Ex transactions were unlawful. Such evidence would allow Dr. Berger to mount a vigorous defense of CACEIS' claims against him in the ongoing civil proceedings. Such evidence would also provide compelling support to Dr. Berger's effort to reopen the criminal proceedings against him.

### C. Dr. Berger Is an Interested Person

Finally, the third threshold requirement for Section 1782 discovery is met because Dr. Berger is or will be a party to the foreign proceedings. Dr. Berger is a defendant in the pending civil proceeding brought by CACEIS, and he will be the petitioner in his proceeding to reopen his criminal case. (Schaffelhuber Decl. ¶ 20).

As a party to the foreign proceedings, Dr. Berger is unquestionably an "interested person." *See Lancaster Factoring Co. v. Mangone,* 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that 'interested person' includes 'a party to the foreign . . . litigation.'") (citing S.Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3789). Indeed, a litigant in a foreign proceeding in a foreign tribunal "may be the most common example of the interested person(s) who may invoke § 1782." *Intel*, 542 U.S. at 256.

## III. The *Intel* Discretionary Factors Weigh Heavily in Favor of Granting Petitioner's Application

Not only does the Application satisfy the Section 1782 statutory factors, the discretionary factors weigh heavily in favor of granting the Application. Shearman is not a party to the foreign proceedings. The foreign tribunals will be receptive to the discovery. The Application is not an attempt to conceal or circumvent foreign proof-gathering restrictions. And the proposed discovery requests are narrowly tailored, and they are neither unduly intrusive nor burdensome.

### A. Shearman Is Not a Party to the Foreign Proceedings

The first discretionary factor weighs in favor of granting the Application. The first factor considers whether the respondent is a party to the foreign proceedings because, when the party from whom the discovery is sought is a party to the foreign proceeding, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. As the Supreme Court acknowledged,

"nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

Here, Shearman is not a party to the foreign proceedings, and indeed, discovery could not be taken from Shearman without the aid of an American court. (Schaffelhuber Decl. ¶ 21). Accordingly, this factor weighs in favor of granting this Application. *See e.g.*, *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y 2011) ("Certainly the fact that respondents are non-parties weighs in favor of granting the petition since, as non-parties to the foreign proceedings, the foreign courts could not themselves order respondents to produce the requested discovery."); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,* No. Civ. M19-88, 2006 U.S. Dist. LEXIS 94161, at *18-19 (S.D.N.Y. Dec. 29, 2006).

**B. <u>The Foreign Tribunals Will Be Receptive to the Discovery</u>**

The second factor considers the nature of the foreign tribunals and proceedings and whether they will be receptive to the discovery sought. This factor again weighs in favor of granting the Application. Notably, courts considering this factor have been instructed to presume the foreign proceedings will be receptive to foreign discovery: "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). Thus, a court should presume receptivity absent "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100; *In re Upper Brook Cos.*, No. 22-mc-97 (PKC), 2022 U.S. Dist. LEXIS 231242, at *22 (S.D.N.Y. Dec. 23, 2022) (second factor weighed in favor of discovery where no "authoritative proof" demonstrated

that the Dutch courts would reject it); *In re Ex Parte Application Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Habib for Use in a Foreign Proceeding*, No. 21-MC-522, 2022 U.S. Dist. LEXIS 72545, *8 (S.D.N.Y. Apr. 20, 2022) (second factor weighed in favor of discovery where no "authoritative proof" demonstrated that the UAE courts would reject it).

A "district court's inquiry into the discoverability of requested materials should consider only *authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782. . . . Authoritative proof is [limited to] language in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. June 22, 2015) (emphasis in original) (internal citations and quotation marks omitted). There is nothing that suggests, let alone proves, that the German courts would not be receptive to evidence obtained in this proceeding.

Not only is there no "authoritative proof" that Germany would reject this discovery—in fact, U.S. courts have previously found that German courts would be receptive to U.S. discovery. *E.g.*, *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018)) (holding that the burden is on the opponent to prove non-receptivity and noting that "it is undisputed that courts routinely grant Section 1782 applications for proceedings in Germany"). This is true even as to criminal court matters in Germany. *See In re B&C KB Holding GmbH*, No. 22-MC-00180 (LAK) (VF), 2023 U.S. Dist. LEXIS 19813, *18-21 (S.D.N.Y. Feb. 6, 2023) (Applying the second *Intel* receptivity factor to a pending German (Düsseldorf) criminal investigation).

In addition, although the Second Circuit has held that there is no requirement that the petitioner show that the evidence is admissible in the foreign proceeding, the evidence sought here will be admissible in both foreign Proceedings. *See Brandi-Dohrn*, 673 F.3d at 82. The German courts would consider Dr. Berger's new evidence in reviewing his application to re-open the criminal proceedings against him. (Schaffelhuber Decl. ¶ 22). Moreover, Dr. Berger will be entitled to offer new evidence in his civil case with CACEIS, regardless of whether the criminal proceedings are reopened and regardless of whether the convictions remain in place. (Schaffelhuber Decl. ¶ 23).

The fact that Dr. Berger has been previously convicted would not bar him from offering new evidence in his civil case with CACEIS to dispute the factual findings underlying his convictions. Unlike the legal systems in certain other countries, a criminal conviction in Germany does not possess an absolute, automatic binding effect (Bindungswirkung) over an independent civil court. Under German procedural law, a final, legally binding criminal conviction is treated as a highly authoritative documentary evidence (Urkundenbeweis), but a civil judge must technically form their own independent opinion of the facts. (Schaffelhuber Decl. ¶ 23). Thus, Dr. Berger has the right to present new evidence in the civil action that would cast doubt upon his legal culpability in regards to the Cum Ex trades. For the civil court to reject the findings of the criminal judgment, the civil court must find the new evidence to be extraordinary and compelling, but that threshold does not apply to the admissibility of the evidence in the civil proceeding. (Schaffelhuber Decl. ¶ 23).

Thus, the second *Intel* factor weighs heavily in favor of granting Petitioner's requested discovery.

### C. The Application Is Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions

The third factor, "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," *Intel*, 542 U.S. at 265, likewise favors granting the Application here. As noted above, the foreign proceedings at issue here would be receptive to the discovery sought. Further, there is no discovery or similar order in place in the proceedings that would bar discovery of this information. Nor is there any restriction or policy under German law that would limit the gathering of the evidence Applicant seeks here. (Schaffelhuber Decl. ¶ 24).

Courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions." *In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 U.S. Dist. LEXIS 173085, at *7 (N.D. Cal. Dec. 15, 2014); *see also In re Eurasian Natural Resources Corp. Ltd.*, No. 18-mc-80041-LB, 2018 U.S. Dist. LEXIS 54857, at *7 (N.D. Cal. Mar. 30, 2018).

The fact that, under German procedures, Petitioner would not have access to third-party discovery outside Germany does not mean Petitioner's Application is inconsistent with German law and policy. As the Supreme Court observed in *Intel*, "'[t]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.'" 542 U.S. at 261 (citing *In re Bayer AG*, 146 F.3d at 194). The Supreme Court further rejected the argument that a court should consider whether the requested discovery would be available in the foreign jurisdiction or whether "United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Id.* at 263.

There is no evidence here of any bad faith misuse of process; rather the discovery Petitioner seeks here is consistent with Petitioner's right to present a case. Petitioner seeks discovery relevant

to the German court proceedings because the target of the discovery is located here, in this district, and not as an attempt to circumvent foreign restrictions. Therefore, the third *Intel* factor also weighs heavily in favor of granting Petitioner's requested discovery.

### D. <u>The Proposed Discovery Requests Are Not Unduly Burdensome nor Intrusive</u>

The fourth factor likewise weighs in favor of granting the Application because the proposed discovery requests are not unduly intrusive or burdensome.

The discovery sought is narrowly tailored to seek documents relating to requests for binding tax rulings from German tax authorities involving a specific type of transaction and during a narrow relevant time period. The documents sought would have been maintained by Shearman in the ordinary course of business, and they are likely easily searchable on Shearman's document management system on Shearman's New York based servers. (Mikelionis Decl. ¶ 11; Dr. Berger Decl. ¶ 14). *See London v. Does 1-4*, 279 Fed. Appx. 513, 515 (9th Cir. 2008) (finding no undue burden "[g]iven the need for the evidence, and the minimal invasion required" where Section 1782 request was narrowly tailored). Nevertheless, to the extent that the respondent asserts reasonable objections to the scope of the requests, Petitioner will work with respondents to appropriately resolve those concerns.

As the Second Circuit has held, it is "far preferable" to resolve concerns regarding scope by tailoring the requests than by denying a Section 1782 application outright. *Metallgesellschaft*, 121 F.3d at 80; *accord Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (holding that, barring abuse of the Section 1782 process, denying an application solely because of concerns regarding scope and burden is an abuse of discretion).

In applying Federal Rule of Civil Procedure 45, which limits unduly burdensome discovery, to a Section 1782 petition, "it must be remembered that they are meant to be broadly

and liberally construed in favor of permitting discovery to take place." *In re Sarrio S.A.*, 173 F.R.D at 198 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). Thus, because the requested discovery is neither unduly burdensome nor oppressive, the fourth and final *Intel* factor likewise weighs heavily in favor of granting Petitioner's request for discovery.

### E. *Ex Parte* Relief Is Appropriate under Section 1782

An *ex parte* proceeding is specifically contemplated and authorized under Section 1782(a). As an alternative to a noticed motion, a party may move *ex parte* for an order directing a third party to produce documents. Following the entry of the order, the third party may respond or otherwise plead. The response can include, *inter alia,* a motion to vacate the order, to limit the discovery or to seek an appropriate protective order. *See, e.g., Symeou v. Hornbeam Corp (In re Hornbeam Corp.)*, 722 Fed. Appx. 7, 10-11 (2d Cir. 2018) (finding that it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*, noting that respondent has right to move to vacate or seek a protective order). The third party may always be afforded an opportunity to address the discovery sought.

## CONCLUSION

For the foregoing reasons, Petitioner Dr. Hanno Berger respectfully requests that the Court grant his *ex parte* Application and authorize him to issue the proposed subpoena, together with such other relief as the Court deems just and proper.

Dated: November 6, 2026
New York, New York

Respectfully submitted,

MORRISON COHEN LLP

By: */s/ Jeffrey D. Brooks*
Jeffrey D. Brooks
909 Third Avenue
New York, New York 10022

Telephone: (212) 735-8600
jbrooks@morrisoncohen.com

*Attorneys for Petitioner Dr. Hanno Berger*

**WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1 of this Court, I hereby certify that the total number of words in this memorandum of law, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 6,698.

/s/ *Jeffrey D. Brooks*
Jeffrey D. Brooks